*152 ORDER DENYING PLAINTIFF S MOTION TO VACATE RULINGS AND DISQUALIFY JUDGE
KATHARINE ENGLISH, Chief Judge.
A. BACKGROUND; INTRODUCTION
The background to and the history of this case have been outlined in prior Court Orders Denying Petitioner’s Motion for a Temporary Restraining Order (TRO) and Granting the Tribal Council’s Motion to Dismiss. To reiterate briefly, Petitioner filed a first amended complaint against the Tribal Council, the Tribe, and three individual Council members alleging generally that the Council acted unlawfully in allowing motions to intervene and to stay to be filed m five on-going ethics matters brought under the Tribal Ethical Standards Ordinance (TESO) and in hiring and paying what Petitioner terms “outside counsel” with Tribal funds to prepare, file and pursue those motions.
Petitioner’s complaint was filed on October 16, 2002. This Court denied Petitioner’s motion seeking the issuance of a TRO on December 6, 2002, and Granted the Tribal Council’s Motion to Dismiss on January 27, 2003. The order granting the motion to dismiss concluded that Petitioner lacked standing to pursue any of the claims that he had not already voluntarily dismissed.[1] That order, thus, was a final trial-court order that disposed of all of Petitioner’s remaining claims. Four days after this Court, granted the motion to dismiss, Petitioner filed the motion that is now pending before the Court, which he styled as a motion “to vacate rulings and to disqualify judge.”
Petitioner’s present motion is based on allegations that, during the time when the Court was considering and ultimately ruling on Petitioner’s motion for a TRO and the Council’s Motion to Dismiss, the Chief Judge of this Court—the judge who ruled on Petitioner’s and the Council’s motions— was in the process of entering into a new contract for the provision of judicial services to the Tribe and was seeking a raise in the hourly rate of pay under the contract, a raise that the Council granted. The Chief Judge of this Court, like all other judicial officers hired by the Council, is hired on a contract basis, rather than being elected by the Tribal membership or appointed for life or for some set number of years, as is the model in state and federal courts.
In his motion, Petitioner contends that the Chief Judge should not have heard this case because of a “direct interest” in the outcome of the litigation, Tribal Code § 310(c)(5)(A), because of bias and prejudice against or in favor of a party, under Tribal Code § 310(e)(5)(B), or, assuming the federal judicial code might apply, because the judge’s impartiality might reasonably be questioned. The Tribal Council has filed an Opposition to Petitioner’s Motion to Vacate the Court’s Prior Rulings and to Disqualify the Judge, “strongly op-posting]” the motion on four bases. The Council contends that (1) Petitioner’s motion was not timely filed, (2) the Chief Judge has no “direct interest” in this proceeding, (3) Petitioner has not shown that the judge has any bias or prejudice, and (4) in any event, “the well-settled common law Rule of Necessity required the Tribal *153 Court’s Chief Judge to hear this ease.” (Tribal Council’s Opposition at 1). Petitioner has filed a reply, disputing each point asserted in the Council’s opposition to his motion.
Because Petitioner announced that he intended to file a notice of appeal prematurely on February 21, 2003, and in order to avoid any issue regarding this Court’s jurisdiction to rule on the pending motion, on February 20th this Court issued an Order Denying Petitioner’s Motion “to Vacate Rulings and to Disqualify Judge.” That order stated that an opinion would follow. This is that opinion.
As noted, the Court denies Petitioner’s motion. Setting aside serious questions about the timeliness of Petitioner’s motion and about whether he has any more standing to file this motion than he has to pursue this action generally, the Court concludes that the motion lacks merit and sweeps far too broadly. This Tribal Government has decided to hire, rather than elect or appoint its judges. Any judge hearing a case in this Court, or in the Tribe’s Appellate Court, will be hired by the Council and paid to hear the case. If this Court and this judge cannot hear this case, then no judge hired by the Council can. The rule of necessity thus allows the Court to hear the case, even assuming that there would otherwise be a conflict—a premise which the Court does not grant, but merely assumes for the sake of discussion. Petitioner’s premise—that a judge hired by the Council cannot hear any case involving the Council or the Tribe—if accepted, would hamstring the Tribal Courts, and his contention amounts to a not particularly indirect attack on the Council’s chosen method for obtaining and retaining judges, viz., by contract.
B. DISCUSSION
The Court has serious doubts both about the timeliness of Petitioner’s motion and about his standing to pursue it. As noted above, the Court already has granted the Council’s motion to dismiss, concluding that Petitioner lacks any standing to bring this action. And standing is a jurisdictional requirement. In its order granting the motion to dismiss, this Court wrote:
Under the United States Constitution, “the federal courts have jurisdiction over [a] dispute * * * only if it is a ‘case’ or ‘controversy.’ This is a ‘bedrock requirement.’ ” Raines v. Byrd, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997), quoting Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). “One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue.” Raines, 521 U.S. at 818, 117 S.Ct. 2312, citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
(Order granting motion to dismiss at 4).[2] Because this Court has determined that Petitioner has no standing to bring this action, he also appears to lack any standing to assert his present motion.
And it also is doubtful whether his motion was timely filed. Petitioner waited to file his motion until after this Court had granted the Council’s motion to dismiss and had entered a final Trial-Court decision that is subject to appeal. Although Petitioner’s response is that he did not know until recently that the Council was in the process of renewing the Chief Judge’s contract, he himself is a Council member *154 and he should have or easily could have known of the expiration date of the judge’s contract, which expired on February 1, 2003, and he certainly knew or should have known that the Council contracts with the Chief Judge, and with other judges it retains, for the provision of judicial sendees.
But, despite the Court’s considerable doubt about the timeliness of Petitioner’s present motion and despite the Court’s earlier decision that Petitioner lacks standing, the Court will consider and decide this motion on its merits. In somewhat hyperbolic terms, Petitioner’s motion attacks and questions the “integrity” of the Tribal Court, and a response to that accusation is warranted.
As noted, Petitioner contends that the fact that the Chief Tribal Court Judge heard this case, while the Council was deciding whether to renew the judge’s contract and to grant a raise in the hourly rate of pay, created a “direct interest” in the outcome of the case, or establishes the judge’s bias and prejudice, or otherwise engenders doubt about the judge’s fairness and impartiality.
The first two accusations can be easily cast aside. Nothing submitted by Petitioner and nothing otherwise apparent to the Court demonstrates that the Chief Judge has any direct interest in the outcome of this litigation. See Atkins v. United States, 214 Ct.Cl. 186, 556 F.2d 1028, 1035 (Ct.C1.1977) (judges of court have no “direct” interest because they have “no direct financial interest in these cases, since none of the judges is a party or otos any legal or equitable interest, however small, in the claims the Plaintiffs are asserting, nor in any party to the proceeding”) (emphasis in original). And Petitioner has not produced any facts sufficient to show that the Chief Judge has any bias or prejudice that would affect the outcome of this proceeding.
But even if some “direct” interest in the outcome were apparent, if any bias or prejudice had been shown, or if the judge’s fairness and impartiality might otherwise be called into question in this case, the rule of necessity would compel the Court to hear it. “Even in cases where the decisionmaker has a financial stake in the outcome, the Supreme Court has recognized that the Rule of Necessity not only alkws, but at times requires, ‘judges to hear and decide cases within their jurisdiction.’ ” Malone v. City of Poway, 746 F.2d 1375, 1376 (9th Cir.1984). “The rule, simply stated, means that a judge is not disqualified to try a case because of * * * personal interest in the matter at issue if there is no other judge” who would not also be disqualified on the same basis. Malone, 746 F.2d at 1376. See also United States v. Will, 449 U.S. 200, 213-14, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980) (holding that rule of necessity allowed both district court and Supreme Court judges to hear ease despite the judges’ direct interest in the rate of pay they were to receive); Evans v. Gore, 253 U.S. 245, 247-48, 40 S.Ct. 550, 64 L.Ed. 887 (1920) (rule allowed Supreme Court to hear case involving taxation of compensation of federal judges); Atkins, 214 Ct.Cl. 186, 556 F.2d 1028 (court required to hear judges’ case regarding the amount of their compensation despite statutory and ethical provisions that otherwise would have mandated disqualification).
The rule recognizes that, where necessary, it is far preferable to provide a judicial forum whose impartiality might be questioned, than to provide no forum at all where all judges who might serve also could face the same or similar complaints. Will, 449 U.S. at 217, 101 S.Ct. 471 (“Far from promoting [a fair forum in which litigants can pursue their claims], failure to apply the Rule of Necessity would have a *155 contrary effect, for without the Rule, some litigants would be denied their right to a forum”).
This proceeding, and Petitioner’s accusations, fall squarely within the rule. The (to some extent unstated) thesis of Petitioner’s challenge is that, even when there is no other reason to suspect that the Tribe’s payment for the sendees of a judge has created some sort of conflict, bias, or lack of fairness, it is sufficient to allege that the Tribe’s payment has created or may create such a conflict. But such a claim sweeps far too broadly and would take in every judicial officer that has been or that could be hired by this Tribe and its duly elected Council. And the claim amounts to an attack on the Council’s chosen method for selecting and hiring judges, that is, by contract, rather than by election or appointment for some set or lifetime term. To that extent, Petitioner’s attack is aimed at this Tribe’s own decisions about how it will govern itself and how it will select and retain its judges. That decision is the Tribe’s and the Council’s, however; it is not a matter for this Court. In sum, the Rule of Necessity permits and compels this Court to hear this case.
In seeking to avoid that result, Petitioner emphasizes that the Chief Judge was considering and ruling on motions in this case during the same period when the Council was deciding whether to renew the judge’s contract or not and was considering the judge’s request for an increase in the hourly rate of pay. In Petitioner’s view, those facts apparently make this case unique or at least different from others where a claim of interest, bias or prejudice might be raised. It should be noted that the Council’s consideration of the judge’s contract did not involve any face-to-face or protracted negotiation. Even the materials submitted by Petitioner along with his motion show that the Tribal attorney, not the judge, presented the contract proposal to the appropriate Council subcommittee and that the judge was not present. (Pet’s motion, Ex 2 at 1-2). Petitioner attempts to derive some sinister significance from the fad. that the Tribal attorney apparently made the presentation, but instead that fact seems to suggest arms-length dealing between the Court and the Council. It also bears emphasis that, although the Chief Judge sought and obtained an increase in the hourly rate of pay, that increase may not result in any overall pay raise because the judge’s hours are apt to be fewer.
Moreover, in all events, the facts that Petitioner stresses in his motion—that the Chief Judge’s contract was up for renewal and that an hourly pay raise was before the Council when this case was before the Court—do not meaningfully distinguish this case from any other where a similar claim of interest, bias, prejudice, or a lack of impartiality might be raised. Petitioner notes that other judges could be hired, even for a single case, such as this one. But a judge hired on even that basis could face the accusation that the judge would be biased based on the hope that a result favorable to the Tribe or to one of its instrumentalities might lead to future single-case appointments and future pay. And any judge hired on a longer-term contract basis by the Council could face, at any time during the contract period, the claim that the judge would be likely to rule in the Tribe’s favor in order to secure another contract in the future or to ensure the assignment of work under the existing contract. Almost every case that comes before the Tribal Court involves the Tribe, the Council, or an instrumentality of the Tribe. Thus, the inevitable, but illogical, result of accepting the premise of Petitioner’s motion here would be to shut down Tribal Court and to make it impossible for *156 any judge hired by the Council to hear any case. That result, in turn, would force the Tribe and the Council to change the way judges are hired and retained, compelling a switch from the current contract system to some other method.[3] If such a change, or any other change, is to be made, however, that is the business of the Council, not of this Court.
C. CONCLUSION
In sum, although Petitioner makes an attempt to limit the focus of his disqualification motion, in fact it sweeps far too broadly and proves too much. If the premise of Petitioner’s motion is accepted, then this Court cannot function, and the Court cannot and will not accept that result.
Therefore, for the reasons given above, and as already ordered in the Court’s order of February 20, 2003, Petitioner’s motion “to vacate rulings and to disqualify judge” is denied.

. Petitioner dismissed, on his own motion, four of the seven claims set out in his first amended complaint.

. As also noted in the Court’s order granting that motion, this Court looks routinely to federal law when it is instructive and helpful, as the Court concluded it was there.

. Indeed, it can be doubted whether even any such change would suffice. Any judge working for the Tribe, whether elected, hired as an employee, or appointed to some term, would be paid by die Tribe and thus would be subject to claims of bias similar to those raised by Petitioner here.